CHARLES LARRANCE, Petitioner, v. THE HUMAN RIGHTS COMMIS-
SION *et al.*, Respondents.

Fourth District   No. 4—87—0205

Opinion filed March 1, 1988.—Rehearing denied March 25, 1988.

Jon D. Robinson, of Hull, Campbell & Robinson, of Decatur, for petitioner.

Bernard Harrold, Anne G. Kimball, and James D. Fiffer, all of Wildman, Harrold, Allen & Dixon, of Chicago, and David B. Stumpf, of Bloomington, for respondents Macon County Farm Bureau, Country Casualty Insurance Company, Country Insurance Company, Country Mutual Insurance Company, Country Life Insurance Company, and Country Capital Management Company.

JUSTICE McCULLOUGH delivered the opinion of the court:

Petitioner appeals an order of the Illinois Human Rights Commission (Commission) which dismissed his complaint. The Commission found it lacked jurisdiction to entertain the cause. (Ill. Rev. Stat. 1985, ch. 68, par. 7—102(A)(1).) Petitioner argues: (1) the Commission erred in retroactively applying *Board of Governors v. Rothbardt* (1981), 98 Ill. App. 3d 423, 424 N.E.2d 742; (2) principles of equitable tolling apply in the instant cause; (3) petitioner's formal charge should be found to relate back to his complainant information sheet (CIS) so as to create a timely charge; and (4) dismissal of petitioner's cause of action because of a State procedure denied him due process.

We affirm.

Petitioner filed his employment-discrimination charge on November 15, 1979. The administrative law judge found for petitioner. On October 27, 1982, respondents filed exceptions to the recommended order and decision, arguing lack of jurisdiction. Petitioner filed a motion to produce additional information. On January 7, 1982, the Commission denied petitioner's motion but on its own motion, remanded for a hearing on the circumstances surrounding the filing. Respondents filed suit in the circuit court to prohibit the hearing on remand. The circuit court ruled the Commission could order an additional hearing. On appeal, this court, in *Country Casualty Insurance Co. v. Human Rights Comm'n* (1984), 127 Ill. App. 3d 1170 (order under Supreme Court Rule 23), affirmed the circuit court. The facts relevant to the instant appeal stem from information obtained at the supplemental hearing.

Petitioner had been hired by respondents, Country Casualty Insurance Company, Country Insurance Company, Country Mutual Insurance Company, Country Life Insurance Company, and Country Capital Management Company (Country Companies) in 1956. In 1962, he was made agency manager in Macon County. On April 30, 1979, petitioner received a letter telling him his employment would be terminated, effective May 31, 1979.

On July 9, 1979, petitioner contacted the Fair Employment Practices Commission (FEPC) in Springfield. Petitioner testified that he had not talked to an attorney at that time. He completed a form entitled "Complainant Information Sheet." On that form, he indicated his termination was due to a heart attack which occurred in 1976. The only document he brought to the meeting was the termination letter. Petitioner stated that he told the intake representative that the name of his employer was Country Companies. George Crawford, the intake representative, told petitioner that he had until the end of November to file a formal charge. Petitioner never calculated the last day on which he could file the charge.

Petitioner further testified that Crawford took notes and raised a question about whether petitioner could file a charge. Crawford indicated the FEPC would decide whether or not to accept the charge. Crawford needed to discuss the matter with his superiors and would contact petitioner. Crawford did not ask for additional information on July 9, 1979.

Petitioner stated Crawford gave him a brochure on July 9, 1979, and he looked at it. Between July 9, and October 29, 1979, petitioner called the FEPC office to check on the status of his cause. On October 29, 1979, the FEPC contacted him to ask for his employment contracts. He brought them in the same day. On October 31, 1979, he met with Crawford. They discussed his heart attack. After he brought in his employment contracts, the individual companies were charged separately.

On November 15, 1979, petitioner signed a formal complaint. No one indicated a timeliness problem. Petitioner stated that although he met with an attorney concerning renewal income from Country Companies to which he felt entitled, he and his attorney did not discuss his employment discrimination action. He would have signed a charge on July 9, 1979, if he had been given one.

On cross-examination, petitioner agreed that the CIS form states it is not a legal charge. On October 4, 1979, his attorney drafted a letter seeking commissions. In the letter, counsel states that if the additional commission is not forthcoming, the employment discrimina-

tion action will be pursued. Petitioner denied delaying filing because of the dispute.

Crawford stated that anyone who wished to file a complaint would be assigned a representative, who gathered the needed information. If the criteria were met, the representative would prepare a charge. The complainant would then sign it. Crawford met plaintiff on July 9, 1979. The CIS is a general information sheet which a complainant completes. The intake officer reviews the CIS before interviewing the complainant to determine if there is a charge.

Crawford stated that he told petitioner he needed to determine a couple of factors and would have to discuss those issues with his supervisor before knowing whether the FEPC would be able to proceed with the charge. Crawford outlined the procedure for petitioner. Crawford believed that May 31, 1979, was the date of the discriminatory act. This was the FEPC's position in 1979. Petitioner, therefore, had 180 days from that date to file his action. He told petitioner the FEPC would decide whether it would accept the charge for filing. Crawford stated that the brochure he gave petitioner did not contain an indication that the FEPC would automatically file complaints or that a complainant may demand a charge be filed.

Crawford further stated that at the time petitioner came in charges were not automatically accepted for filing. The policy changed after July 1980. Petitioner's charge was not accepted on July 9, 1979, and Crawford did not draft a charge for him. Crawford had a question about whether petitioner was an employee. However, he covered all the jurisdictional prerequisites and could have prepared a charge on July 9, 1979.

Crawford stated that petitioner cooperated. After Crawford had a meeting with his supervisor, he prepared a charge on October 31, 1979. He and his supervisors had determined that petitioner was an employee under the Fair Employment Practices Act (Ill. Rev. Stat. 1979, ch. 48, par. 852(c)). Petitioner signed the charge on November 15, 1979.

Crawford admitted that now the Commission will file a charge if a complainant insists even if the jurisdictional prerequisites are not fulfilled.

Sandra Jean Kimberly, an intake representative with the Commission, stated that when she first started, a complainant had 180 days from the last day of employment to file a charge. Now, a complainant has 180 days from the date he is told of his termination to file. She believed the change occurred after January 1, 1980. However, it had always been a practice to accept a charge if the complainant wanted

one filed, regardless of whether the intake representative wanted him to file a charge. She tells complainants this fact. The policy in effect when plaintiff filed his charge was to file charges even if a question existed about their validity.

The documents indicate plaintiff was not told that he could insist on filing a charge and Crawford asked plaintiff to bring in his contracts on July 9, 1979.

A supplemental recommended order and decision (SROD) was filed on November 12, 1985. The hearing officer found *Rothbardt* applied but that the Commission's actions caused the tardy filing. Therefore, the hearing officer felt that the Commission had jurisdiction pursuant to United States Supreme Court cases. He also found the November 15, 1979, charge was not an amendment of an earlier charge so did not relate back to the CIS. The Commission did not follow the recommendation and found that it did not have jurisdiction. It also found the United States Supreme Court cases were distinguishable.

Initially, petitioner argues *Rothbardt* should not apply retroactively to his cause because he justifiably relied on an administrative interpretation of the charge-filing limitations period. He had no choice but to rely upon the administrative agency. Respondents point out that the *Rothbardt* court itself retroactively applied its decision, that the degree of untimeliness is irrelevant in determining retroactivity, and petitioner's reliance on existing administrative interpretation of the law does not affect the applicability of *Rothbardt* to his case.

In *Rothbardt*, this court held that an aggrieved employee had 180 days from the time he was notified of termination of employment to file a charge under the Fair Employment Practices Act, interpreting section 8 of the Fair Employment Practices Act. (Ill. Rev. Stat. 1973, ch. 48, par. 858.) Rothbardt, a college professor, was notified that she would not be given tenure. She then received a terminal contract. She filed a charge within 180 days of her last actual day of work but in excess of 180 days of the date of the notice. The Board of Governors raised a jurisdictional question throughout.

The circuit court found the agency lacked jurisdiction over the cause. The appellate court affirmed, holding that timely filing was a necessary condition to the FEPC's jurisdiction. In determining that the period started to run at the time notice was given, the court relied on *Delaware State College v. Ricks* (1980), 449 U.S. 250, 66 L. Ed. 2d 431, 101 S. Ct. 498, where the court reached a similar result. This court affirmed dismissal of Rothbardt's complaint. The court noted that the time limitation was an inherent part of the right cre-

ated. (See also *Pickering v. Human Rights Comm'n* (1986), 146 Ill. App. 3d 340, 496 N.E.2d 746 (where the court held that the 180-day charge-filing limitation period was an inherent part of the employment discrimination action created by the statutes); *Lee v. Human Rights Comm'n* (1984), 126 Ill. App. 3d 666, 467 N.E.2d 943.) Section 8 of the Fair Employment Practices Act was incorporated into the Illinois Human Rights Act (Human Rights Act) as section 7—102(A)(1). Ill. Rev. Stat. 1985, ch. 68, par. 7—102(A)(1).

■ Petitioner in the instant cause does not contest in this court that the charge-filing limitation period is an inherent part of the right created. However, he argues that this court should not apply *Rothbardt* to his situation but should only apply it prospectively. The decision of a court is generally applied retroactively to the case under consideration. The criteria for determining prospective or retroactive application of a decision are: (1) a decision to be applied prospectively must establish a new principle of law; (2) will the purpose and effect of the new decision be best served by prospective or retroactive application; and (3) the equities of the situation. *Revoal v. Human Rights Comm'n* (1984), 128 Ill. App. 3d 70, 470 N.E.2d 54.

■ It is part of the inherent power of the court to determine whether its decision should be prospectively or retroactively applied. (*Lane v. Sklodowski* (1983), 97 Ill. 2d 311, 454 N.E.2d 322.) Reliance is a factor to be considered. (*Brown v. Metzger* (1984), 104 Ill. 2d 30, 470 N.E.2d 302.) However, as a general rule, a decision will be applied retrospectively unless the court expressly declares that its decision is a clear break with the past, such as when a court explicitly overrules its own past precedent, disapproves a practice that it has previously approved, or overturns a well-established body of lower court authority. (*People v. Boswell* (1985), 132 Ill. App. 3d 52, 476 N.E.2d 1154.) Judicial interpretation of a statute does not necessarily constitute a change in the law. *People v. Crete* (1986), 113 Ill. 2d 156, 497 N.E.2d 751.

■ Plaintiff argues *Rothbardt's* interpretation should not control his case essentially because *Rothbardt* was decided after he had filed his complaint and while the decision of the hearing officer was pending. He argues his reliance on the intake officer's statement and the FEPC's interpretation of the statute should bar retroactive application. Parties have a right to rely on the decisions of the supreme court. (*Moehle v. Chrysler Motors Corp.* (1982), 93 Ill. 2d 299, 443 N.E.2d 575; *Garcia v. Hynes & Howes Real Estate, Inc.* (1975), 29 Ill. App. 3d 479, 331 N.E.2d 634.) Reliance on administrative interpretations is entitled to weight in determining whether a decision should be

given retroactive or prospective application, but it is not controlling. (*People ex rel. Ponder v. Bensinger* (1974), 57 Ill. 2d 55, 310 N.E.2d 161.) It, as well as lower court opinions, is subject to review and modification by the supreme court.

Although a court of review may also give significant weight to an agency's interpretation of a statute which it is charged with enforcing, the agency's interpretation is not binding on the court. (*People v. Roos* (1987), 118 Ill. 2d 203, 212, 514 N.E.2d 993, 998; *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 447 N.E.2d 295.) An agency, however, is bound by an uncontested judicial interpretation of a statute. *Spraic v. United States R.R. Retirement Board* (9th Cir. 1984), 735 F.2d 1208, 1211.

The charge-filing limitation period is an inherent part of the employment discrimination action created by the statutes. The *Rothbardt* case was the first judicial interpretation of this type of language in Illinois, and its interpretation is binding on the agency. Since timely filing is a jurisdictional part of the right created and the 180 days are counted from the time of the discriminatory act, petitioner here has no cause of action. The Commission was correct in dismissing the action.

An administrative agency can only act pursuant to its statutory authority. (*City of Chicago v. Fair Employment Practices Comm'n* (1976), 65 Ill. 2d 108, 357 N.E.2d 1154; *Pickering*, 146 Ill. App. 3d 340, 496 N.E.2d 746.) Any action outside of that authority is void. Since the agency interpretation is controlled by the judicial interpretation of a statute, the agency was bound by *Rothbardt* and lacked authority to hear plaintiff's complaint. Interpretation of the statute did not create new law, there were no past precedents to break with, and petitioner's reliance on the administrative interpretation needs to be balanced with the potential harm to respondents, who raised the issue throughout.

Petitioner next argues that the charge-filing period should be tolled because the agency misled him. In *Pickering*, plaintiff was employed as a sales manager when his position was terminated. At the time of termination, he signed a release of all of his claims against his employer. Subsequently, he filed an employment discrimination action arguing he had been terminated because of a physical disability. Pickering argued that equitable tolling and estoppel concepts should bar enforcement of the 180-day charge-filing limitations period. The appellate court found to the contrary, noting the distinction between statutes of limitations and limitations periods which are an inherent part of the right created. Concepts of equitable estoppel, tolling, and

waiver usually apply to statutes of limitations, not limitations periods which are inherent parts of the right of action created. See also *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 486 N.E.2d 893, for a discussion of the distinctions between the two types of limitations.

The appellate court in *Pickering* found that estoppel did not apply. In *Lee v. Human Rights Comm'n* (1984), 126 Ill. App. 3d 666, 467 N.E.2d 943, the appellate court stated the 180-day charge-filing limitations period was jurisdictional. The *Lee* court, however, stated that if appropriate factors were present, the employer would be estopped from raising the issue.

Petitioner urges this court to find equitable tolling here based on the language in *Lee* and *Dartt v. Shell Oil Co.* (10th Cir. 1976), 539 F.2d 1256. *Dartt* is distinguishable from the instant case. In *Dartt*, the court reviewed the filing limitations period in the Fair Labor Standards Act. The court noted the period was analogous to a statute of limitations so equitable modifications were appropriate. See also *Zipes v. Trans World Airlines, Inc.* (1982), 455 U.S. 385, 71 L. Ed. 2d 234, 102 S. Ct. 1127.

■ In the instant cause, no employer misconduct is involved so the applicability of the *Lee* exception need not be addressed. Additionally, agency representatives did not mislead the petitioner. The agency position and its interpretation of the law were correctly stated to petitioner. This interpretation was altered by a judicial decision. Therefore, neither the agency nor the employer intentionally misled petitioner to his disadvantage since both acted on the information available. Equitable tolling is a concept which should be applied to prevent injustice when the agency has knowingly misled a complainant or in some manner acted unfairly. It does not apply under the instant circumstances.

Petitioner next argues that the Commission should have accepted the CIS as an unperfected charge and allowed the November 15, 1979, charge to relate back to it. It is uncontested that under the FEPC rules in effect in 1979, the FEPC could have accepted a charge for filing if it was written even though it lacked an element necessary for a perfected charge. A later amendment would relate back to the original unperfected charge.

■ Here, the hearing officer found, and the Commission approved the finding, that no unperfected charge was filed in a timely fashion. This is essentially a factual determination by the agency. Factual determinations of administrative agencies are considered *prima facie* true and correct. They will be affirmed unless they are contrary

to the manifest weight of the evidence. *Department of Corrections v. Adams* (1986), 146 Ill. App. 3d 173, 496 N.E.2d 1138.

Petitioner asserts this case is analogous to *Logan v. Zimmerman Brush Co.* (1982), 455 U.S. 422, 71 L. Ed. 2d 265, 102 S. Ct. 1148, and therefore, he has a due process interest in preservation of his cause of action. In *Logan*, the United States Supreme Court held that a State may not terminate a complainant's cause of action because a State official, for reasons beyond the complainant's control, failed to comply with the statutorily mandated procedure. In *Logan*, plaintiff filed a *timely* complaint with the FEPC, alleging employment discrimination. The statute gave the FEPC 120 days to convene a fact-finding hearing. After the fact-finding determination, the FEPC had 180 days to decide whether it would issue a formal complaint. The FEPC failed to hold the fact-finding hearing within the 120 days. The Illinois Supreme Court affirmed a finding that the FEPC lost jurisdiction over the cause.

The United States Supreme Court reversed. It held the complainant had a protected property interest in the continuation of his cause of action such that it could not be eliminated by the State's failure to act. In a footnote, the United States Supreme Court specifically stated that it was not suggesting a State had to consider the merits of a claim which was not timely filed. (*Logan*, 455 U.S. at 434 n.7, 71 L. Ed. 2d at 277 n.7, 102 S. Ct. at 1157 n.7.) Illinois courts have applied *Logan* to similar situations. (See *Lott v. Governors State University* (1982), 106 Ill. App. 3d 851, 434 N.E.2d 569.) However, the instant situation is distinguishable from *Logan* and analogous to the situation stated in the footnote. Petitioner could not rely on an administrative interpretation to create a protected property interest in an action which was not timely under a judicial construction of the statute.

For the above reasons, we affirm the judgment of the Illinois Human Rights Commission.

Affirmed.

GREEN, P.J., and LUND, J., concur.